## CONSTRUCTION OF THE ONE PER CENT. LIMITATION ON MUNICIPAL BOND ISSUES.

Circuit Court of Lucas County.

HARVEY P. PLATT, A TAX-PAYER, ON BEHALF OF THE CITY OF TOLEDO, v. THE CITY OF TOLEDO ET AL.[*]

Decided, November 18, 1908.

*Municipal Corporations—Limitations of Bond Issues—What Bonds May be Excluded in Determining Whether Limitation has been Reached—Bridges—Validity of Ordinance Providing for Less than a Completed Structure—Intention to Complete the Structure—Sections 2835 and 2835b.*

1. A municipal council has power and discretion to authorize contracts to be entered into and to issue bonds for the completion of parts of a bridge over a navigable river within the municipal limits without making provision for the construction of a draw or other method of spanning the river. The fact that an expressed intention to complete the bridge is revokable will not defeat the exercise of such power.

2. An issue of bonds amounting to $525,000 by a city having an aggregate of $370,000 of bonds authorized and a tax valuation of $79,-000,000, will not be deemed as in excess of the 1 per cent. aggregate limitation prescribed by Section 2835, Revised Statutes, if in view of the modification of Section 2835b, eliminating all bonds issued prior to April 29, 1902, whether they be original bonds to provide for payment for construction of water works or bonds to refund indebtedness created by such original issues, the proposed issue added to that already authorized not within the excepted bonds, does not exceed the prescribed limitation.

*B. A. Hayes,* for the plaintiff.
*C. S. Northup* and *J. P. Manton,* contra.

WILDMAN, J.; PARKER, J., and KINKADE, J., concur.

This case is one of so much importance to the litigants and to the community as to invite a larger discussion of the issues involved than I feel justified in entering into; indeed I shall re-

---

[*]Affirmed by the Supreme Court, without report, *Platt* v. *Toledo,* 80 Ohio State, —.

frain from any elaborate review of the very able arguments of counsel and the computations and estimates made, because of what seems almost certain, that whatever decision may be rendered by this court will not be a finality—in other words, the case will almost inevitably go to the Supreme Court of the state for final review.   I assume that, because of the large interests involved and the importance of the questions presented. The case is in this court upon appeal, it having been instituted in the court of common pleas by Harvey P. Platt to enjoin the issue of city bonds to the amount of $525,000 for the construction of a bridge—or what is claimed upon one side, to be a part of a bridge—across the Maumee river in this city.

It is said that there are two substantial reasons why this issue should be enjoined: first, that by the issue of such bonds, coupled with other bonds authorized by the city during the current year of 1908, the limit of one per cent. of the taxable value of property of the city will be exceeded; and also that there is no authority given by law for the issue of bonds to construct anything but a completed bridge.

As to the second of these propositions just recited, this court has already expressed its view in a previous suit instituted by this same plaintiff against the city to enjoin the issue of other bonds for this same structure.   In that case, the opinion in which was announced by Judge Kinkade, it was said, in substance, that the court saw no reason to hold that the contention of the plaintiff in that regard was correct.   The matter has, however, been very ably re-argued, and in courtesy to counsel, the arguments might receive some additional attention notwithstanding the opinion which has already been expressed and the decision which has been rendered by this court.   But the question was just as completely involved in the former case, of course, as in the present one, and we are disposed to adhere to the views therein expressed.

It is true that it may not be within the purview of the statute to authorize a municipality, under the guise of constructing a bridge, to issue bonds for the construction of something which is not a bridge, and we do not quarrel very much with the definitions offered by counsel for plaintiff of the term "bridge."

There is, however, in the ordinance passed by the city council in evidence before us, a very clear expression of an intention that a complete bridge, including a draw, or some other means of spanning the stream, shall be constructed; and it is apparent that the present issue of bonds was limited to the sum of $525,-000, an amount insufficient for the construction of an entire bridge, including a draw or other means of completing the structure, because of the requirements of the statute that the limitation of one per cent. shall not be exceeded, or perhaps because of the desire of the council to protect the city against any unnecessary payment of interest upon its bonds until the time shall arrive when it is necessary to make payments for a completed structure. It is said that the intention, so expressed in this ordinance, is in no wise binding upon either the present council or future councils—that it is revokable, and that there should be something in addition to it in the way of authorization of the board of service to construct an entire bridge; but we are inclined to think that the expression of the intent of the legislative body of the city in the present case is no more revokable than was the apparent authorization to the board of service given for the construction and extension of a filtration plant, the facts concerning which are recited in *Yaryan* v. *Toledo,* 8 C. C.—N. S., 1. In that case, it is true, there was not only a section expressing the intention of the council that an entire filtration plant should be constructed, but also an expressed authorization to the board of service to construct; but this authorization was more apparent than real, because the board of service was powerless to act until the means were provided for the carrying out of the contracts into which it might enter. The contracts themselves would be of no validity until the funds were provided for carrying out the obligations thereby incurred. On page 26 of the opinion announced by my associate, Judge Parker, in the Yaryan case, *supra,* after quoting the expressions in the ordinance of claimed authorization to construct the entire plant, this language is used:

"This, we think, is within the power and the discretion of the council. Of course, such plans might be defeated by the subsequent action of the council or by another council, because one

council can not bind its successors, and the whole plan might be overturned in so far as its overturning would not interfere with contracts lawfully entered into or other vested rights.''

It does not appear that the expression of an intention to build an entire bridge is any more revokable at the instance of the present council, or any subsequent one, than was the expression of intention and apparent authority in the Yaryan case, and we are disposed to apply the principle of that case to the present one, and to hold that the council in exercising the power conferred upon it by law and in the protection of the best interests of the city of Toledo, may authorize contracts to be entered into and provide the means for their fulfillment, for the completion of parts of such structures as the statute says they may provide means to pay for, by the issue of bonds or otherwise. We think that this contention that the council was powerless to issue bonds for the construction of a bridge without making provision for the construction of a draw or other method of completely spanning the stream, should not be sustained, and we adhere to the decision made in this respect upon the other trial between the same parties.

As to the other issue—whether the attempted issue of $525,000 of bonds, added to the amount of other bonds authorized to be issued during the year 1908, exceeded the limit established by the statute—the question is to be determined by the consideration of the various estimates of values, the figures given us as to the issues of other bonds in connection with certain qualifications of the statutory limitation found in Section 2835b of the Revised Statutes. There are several sections which touch more or less directly upon the questions under consideration. Without reading them, I may cite Revised Statutes, 2835, 2835b, 1536-523, and an act for the issue of refunding bonds, 1536-282.

I have before me notes of the agreed amounts of bonds issued in the several years prior to 1908, together with those authorized to be issued during the present year. There is an aggregate of $370,000 of bonds authorized to be issued in 1908 besides the issue now sought to be enjoined, making a total of $895,000. It is agreed that the valuation of the city property does not exceed $79,000,000, one per cent. of which would be $790,000,

so that if the qualifications in the section to which I have referred—2835b—do not decrease the amount of the bonds below the present amount authorized, there is no question that the issue would be in excess of the limitation allowed, and the decrease would have to be to a total amount of not to exceed $790,-000. I will not tarry long upon a discussion of the construction of Section 2835b, but will simply express my own opinion—and probably that of the other members of the court—that sufficient emphasis has not been placed, in argument, upon the last clause or two of Section 2835b, and especially the expression of what is to be considered in arriving at the limitation therein provided. To make intelligible the view at which we have arrived, it is necessary to read this section:

"Provided, further, that the limitations of one per cent. and four per cent. prescribed in Section 2835, R. S., shall not be construed as affecting bonds issued under authority of said Section 2835 upon the approval of the electors of the corporation; nor shall bonds which are to be paid for by assessments specially levied upon abutting property; nor bonds issued for the purpose of constructing, improving and extending water works when the income from such water works is sufficient to cover the cost of all operating expenses, interest charges and to pass a sufficient amount to a sinking fund to retire such bonds when they become due, nor any bonds issued prior to the passage of Section 2835, R. S., as amended April 29, 1902, be deemed as subject to the provisions and limitations of said section, or be considered in arriving at the limitations therein provided."

Without going over the mass of figures submitted to us, I invite especial attention to the language which I have now read, in the closing part of this section: "Nor [shall] any bonds issued prior to the passage of Section 2835, R. S., as amended April 29, 1902, be deemed as subject to the provisions and limitations of said section, or be considered in arriving at the limitations therein provided."

It seems to us that there is no escape from the conclusion that in determining the one per cent. of the tax valuation of property in the city, or rather in determining the amount of bonds which may be issued under the limitation, all bonds issued prior to the amendment of Section 2835, on April 29, 1902, should be

excluded, whether they be original bonds to provide payment for the construction of water works, or bonds to refund indebtedness created by such original issues, and under that view, if we understand aright the contention of counsel for plaintiff, they substantially concede that the limit of one per cent. is not exceeded by the issue of $525,000 of bonds added to the bonds already authorized for 1908, when the amount of the bonds for water works purposes is taken with the qualification that such bonds shall not be considered when the revenue from the water works rentals is sufficient to provide for the expenditures, maintenance and repairs and to pay the interest on the bonds and provide a sinking fund for their payment at maturity. I do not care to go into the figures which led to the agreement and concession which have been made in the case. The amount of the bonds issued prior to the date of the amendment of Section 2835 referred to in the statute, should be, as I have said, eliminated from our enquiry, and taking the bonds issued subsequent to that date—i. e., to the amending of that section—the income derived from the water works in 1907, to-wit, $204,000, would be sufficient for the purposes expressed in the statute so as to prevent the application of the amount of issue of water works bonds in 1908—$230,000—upon the aggregate amount permissible under the statute.

The conclusion at which we arrive is, that the plaintiff's contention that the council is exceeding the issue permitted by Section 2835 and Section 2835b, is not maintained; and, entertaining these views as to both of the questions presented, we can arrive at no other conclusion than that the plaintiff's petition should be dismissed, and such will be the judgment.